*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALLECIA DICKS,

        Plaintiff-Appellant,

v

THE FORBES COMPANY, LLC, d/b/a
SOMERSET COLLECTION MALL, and CURTIS
GLASS COMPANY,

        Defendants-Appellees.

UNPUBLISHED
May 11, 2023

No. 362208
Oakland Circuit Court
LC No. 2021-186293-NO

Before: GLEICHER, C.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Allecia Dicks slipped and fell on a puddle of water at the Somerset Collection Mall. Evidence supported that the water came from a leaking skylight. Dicks filed suit against the mall and a glass company periodically repaired the skylights. The circuit court determined that the condition was open and obvious and summarily dismissed Dicks's claims against both defendants.

Unlike the mall, the glass company did not owe Dicks any duty of care. The evidence supports that the mall had constructive notice of the leaking skylight and that the condition was not open and obvious. We affirm the dismissal of Dicks's claims against Curtis Glass Company but vacate the dismissal of her claims against The Forbes Company d/b/a Somerset Collection Mall (Somerset) and remand for continued proceedings.

## I. BACKGROUND

In September 2020, Dicks worked at the Apple Store in Somerset Collection Mall North. She was stationed in a roped-off area in front of the store where she monitored the flow of customers into the store to meet reduced capacity requirements instituted as a COVID-19 protocol. Two carts on the left side of Dicks's work station held various items Dicks needed for her work. At approximately 10:00 a.m., Dicks slipped on a puddle of water near the carts, but did not fall. A third-party contractor hired by Apple cleaned up the puddle and placed a warning sign in the area. Dicks assumed that the puddle was created by a spilled beverage. At approximately 5:30 p.m., Dicks returned to the left side of the work station to complete a task. She slipped and fell on a new

puddle of water that had accumulated in the area. Dicks asserted that she was looking where she was walking but did not see the puddle until she was on the shiny white marble floor.

During discovery, evidence revealed a history of leaks from the mall's skylights. Somerset North was constructed in 1996. Somerset's facilities director, Paul Deschepper, opined that Curtis Glass had installed the skylights in Somerset North. Curtis Glass Service Manager Joseph Gyuran, on the other hand, asserted that it was not hired as a Somerset contractor until 2010. Deschepper and Gyuran also disagreed regarding the type of work that Curtis Glass performed for Somerset. Both agreed that Somerset would contact Curtis Glass on an as-needed basis to repair skylight leaks.

Gyuran testified that most of the skylight leaks were due to worn-out caulk. The type of caulk used to seal the Somerset North skylights when they were installed in 1996 begins to crack after 20 to 25 years. Gyuran inspected the skylight outside the Apple Store following Dicks's fall and discovered that the original caulk was still in place.

Dicks filed this negligence action against Somerset and Curtis Glass. Following discovery, both defendants moved for summary disposition under MCR 2.116(C)(10). Curtis Glass contended that it owed no duty to Dicks and both defendants asserted that the allegedly dangerous condition was open and obvious. The circuit court agreed and dismissed Dicks's complaint in its entirety. Dicks now appeals.

## II. ANALYSIS

We review de novo a circuit court's resolution of a summary disposition motion. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). Summary disposition is appropriate under MCR 2.116(C)(10) where "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." "A motion under 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "[T]he circuit court must consider affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "Courts are liberal in finding a factual dispute sufficient to withstand summary disposition." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009).

Dicks's claim against Curtis Glass sounds in ordinary negligence. "Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012). Curtis Glass had no ownership or possessory interest in Somerset Collection Mall that could create a duty in a premises liability action. See *Derbabian v S & C Snowplowing, Inc*, 249 Mich App 695, 702; 644 NW2d 779 (2002) ("To be liable under a premises liability theory, plaintiff must show that defendant was a possessor . . . at the time of plaintiff's injury."). Accordingly, any claims against it must arise in ordinary negligence.

Dicks failed to establish that Curtis Glass owed her any duty of care even under ordinary negligence principles. "The threshold question for negligence claims brought against a contractor on the basis of a maintenance contract between a premises owner and that contractor is whether

the contractor breached a duty separate and distinct from those assumed under the contract." *Fultz v Union-Commerce Assoc*, 470 Mich 460, 461-462; 683 NW2d 587 (2004). The court's focus should be on whether the contractor owes a plaintiff any duty at all "without regard to the obligations contained within the contract" between the landowner and the contractor. *Loweke v Ann Arbor Ceiling & Partition, Co, LLC*, 489 Mich 157, 171; 809 NW2d 553 (2011). "The most important factor to be considered is the relationship of the parties." *In re Certified Question from the Fourteenth Dist Court of Appeals of Texas (Miller v Ford Motor Co)*, 479 Mich 498, 505; 740 NW2d 206 (2007). Whether a duty of care exists depends on whether the nature of the parties' relationship obligated an allegedly negligent defendant to act in a manner benefitting the plaintiff. *Id*. at 505-506. "Where there is no relationship between the parties, no duty can be imposed. . . ." *Id*. at 508.

Here, Curtis Glass did not own or possess any part of Somerset Collection Mall. Its employees were not present on the day of the fall. Curtis Glass was simply an independent contractor hired by Somerset on an as-needed basis. It owed no independent duty to anyone within the mall. Accordingly, summary disposition of Dicks's claim against Curtis Glass was proper.

Dicks's claim against Somerset, however, sounds in premises liability. "In a premises-liability action, as in any negligence action, the plaintiff must establish the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) the plaintiff suffered damages." *Jeffrey-Moise v Williamsburg Towne Houses Coop, Inc*, 336 Mich App 616, 626; 971 NW2d 716 (2021). "Premises liability is conditioned upon the presence of both possession and control over the land." *Merritt v Nickelson*, 407 Mich 544, 552; 287 NW2d 178 (1980). "[P]remises liability is conditioned upon the presence of both possession and control over the land because the person in possession is in a position of control and normally best able to prevent any harm to others." *Anderson v Wiegand*, 223 Mich App 549, 555; 567 NW2d 452 (1997).

As the owner and occupier of a retail establishment, Somerset owed Dicks, an invitee, a heightened duty of care. Somerset was duty bound to "not only to warn [Dicks] of any known dangers, but the additional obligation to . . . make the premises safe, which require[d] [Somerset] to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards." *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597; 614 NW2d 88 (2000).

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if the owner: (a) knows of, or by the exercise of reasonable care would discover, the condition and should realize that the condition involves an unreasonable risk of harm to such invitees; (b) should expect that invitees will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect invitees against the danger. [*Id*.]

Dicks created a triable question of fact that Somerset's failure to maintain the premises was both a cause in fact and a proximate cause of her injury. In a premises liability action, "an invitee must show that the premises owner breached its duty to the invitee and that the breach constituted the proximate cause of damages suffered by the invitee." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich

1, 8; 890 NW2d 344 (2016).[1]  "[P]roving proximate cause actually entails proof of two separate elements: (1) cause in fact, and (2) legal cause, also known as 'proximate cause.' " *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994).  "The cause in fact element generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Id.* at 163.  "On the other hand, legal cause or 'proximate cause' normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Id.*

Evidence supported that the puddle was a cause in fact and a proximate cause of Dicks's injury.  Dicks slipped on the puddle and fell, making it a cause in fact of her injury.  A puddle of water was present in Dicks's work space at 10:00 a.m. and redeveloped by 5:30 p.m.  A reasonable inference supports that if two similar puddles appeared in the same spot on the same day, they likely came from the same source.  Further, evidence established that skylight leaks have been a frequent problem at Somerset Collection Mall since at least 2016.  Somerset knew of the leaks, as evidenced by the many times Somerset contacted Curtis Glass to repair them between 2016 and the time of the accident.  Arguably, Somerset should have foreseen that the skylight above the Apple Store would leak and create a puddle, which could cause injury.  Further, an inspection revealed that the skylight above the Apple Store still had the original caulk from the construction of Somerset North in 1996.[2]  The type of caulk used in the original construction begins to crack after 20 to 25 years.  Therefore, a reasonable jury could readily infer that Dicks's fall was proximately caused by a skylight leak.

---

[1] The Supreme Court's use of the phrase "the proximate cause" in *Lowrey* is an obvious misstatement of the law. In a negligence case, a plaintiff may succeed by proving that the defendant's breach of duty was *a* proximate cause and *a* cause in fact of an injury:

> The proper interpretation of proximate causation in a negligence action is well-settled in Michigan.  In order to be a proximate cause, the negligent conduct must have been a cause of the plaintiff's injury and the plaintiff's injury must have been a natural and probable result of the negligent conduct.  These two prongs are respectively described as "cause-in-fact" and "legal causation." [*O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 496; 791 NW2d 853 (2010).]

"It is not uncommon that more than one proximate cause contributes to an injury." *Ray v Swager*, 501 Mich 52, 65; 903 NW2d 366 (2017).

[2] Somerset complains that evidence of this inspection was inadmissible under MRE 407 as a subsequent remedial measure.  The evidentiary rule only precludes evidence of measures taken after an event that would have lessened the likelihood of the event.  It

> does not apply to investigative reports, or post-accident inspections that reflect the condition of the machine or instrumentality in question or analyze the cause or reasons for an accident. The reason is that such reports or inspections are not themselves remedial measures, and do not themselves even reflect decisions to take or implement such measures.  [2 Federal Evidence (4th ed), § 4:50.]

To prevail on a premises liability claim, the plaintiff also must establish that the defendant landowner or possessor had either actual or constructive notice of the dangerous condition. *Lowrey*, 500 Mich at 10. There is no evidence that Somerset had actual knowledge of the puddle. But Somerset should have known of the dangerous condition. A premises owner or possessor is deemed to have constructive notice of a dangerous condition if it "is of such a character or has existed a sufficient length of time that he should have knowledge of it." *Id*. at 12 (quotation marks and citation omitted). "[C]onstructive notice arises not only from the passage of time itself, but also from the type of condition involved, or from a combination of the two elements." *Kroll v Katz*, 374 Mich 364, 372; 132 NW2d 27 (1965).

Somerset was aware that its skylights were failing at a high rate. Evidence revealed that Curtis Glass had repaired leaking skylights on approximately 30 occasions since 2016. On the day in question, puddles from this skylight leak had accumulated twice—once at 10:00 a.m. and again by 5:30 p.m. And the puddle that developed by 5:30 p.m. was relatively large. Given the nature of these ongoing problems, a jury could find that Somerset had constructive notice that puddles developed in the mall due its leak-prone skylights. The size of the puddle in question is evidence of the time it took to develop, giving Somerset adequate time to discover and remediate the condition before Dicks fell.

We also find instructive *Herteg v Somerset Collection GP, Inc*, unpublished per curiam opinion of the Court of Appeals, issued September 20, 2002 (Docket No. 227936).[3] In *Herteg*, this Court found evidence of constructive notice where Somerset knew that leaks regularly developed around the skywalk between the north and south sides of the mall and yet failed to inspect the area after a heavy rain. *Id*. at 5. The size of the puddle supported that it "obviously had to have been accumulating sometime before the accident." *Id.* at 6. As in *Herteg*, evidence of constructive notice in this case precluded summary disposition. See also *Tompkins v Crown Corr, Inc*, 726 F3d 830, 844 (CA 6, 2013) (holding that there was a triable question of fact regarding constructive notice where the landowner was aware that frequent leaks created puddles in an airport terminal and therefore should have conducted more frequent inspections and taken care to prevent the development of puddles).

Summary disposition was also improperly granted based on the allegedly open and obvious nature of the dangerous condition. A landowner's duty to protect invitees from unreasonable risks of harm "does not generally encompass removal of open and obvious dangers." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001).

> The question of whether a condition presents an open and obvious danger depends on whether it is reasonable to expect an average person of ordinary intelligence to discover the danger upon casual inspection. The test is objective; the inquiry is whether a reasonable person in the plaintiff's position would have done so. [*Watts v Multi-King, Inc*, 291 Mich App 98, 102; 804 NW2d 569 (2010).]

---

[3] Although not precedentially binding, this Court's unpublished opinions can be instructive or persuasive. *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 303 Mich App 441, 450 n 2; 844 NW2d 727 (2013) (quotation marks and citations omitted).

This Court asserted in *Watts*, 291 Mich App at 104, that even in a restaurant where a drink is likely to be spilled, a wet floor is not "a common everyday hazard of which customers are expected to be aware, making it always open and obvious regardless of its visibility." (Emphasis omitted.) Here, Dicks testified that she could not see the water puddle against the shiny white marble floor. And we again find *Herteg* instructive. That case also involved a puddle on the white marble floor of Somerset Collection Mall. The witnesses described the puddle as "so transparent as to be virtually undetectable because of the 'shinny [sic] marble' floor." *Herteg*, unpub op at 6. This Court held that "a reasonable jury could conclude that the mall should have expected that its mall walkers would not discover the puddle or fail to protect themselves against it." *Id.* The nature of Somerset's floors did not change by the time of Dicks's fall; the floors were still composed of shiny white marble that masked the presence of water to a reasonable person upon casual inspection.

The presence of the wet floor sign in this case does not change our analysis. The sign was not in place because of any active danger perceived by Dicks or any other Apple or Somerset employee. The warning sign was erected early in the workday after an Apple contractor cleaned up a puddle of water. At that point, Dicks believed the puddle was caused by a spilled drink. The sign remained in place all day because the Apple employees were too busy to remove it, not because they believed additional water would pool in the area. Under these unique circumstances, it would be reasonable for a finder of fact to determine that the puddle was not open and obvious despite the presence of a wet floor sign.

We affirm the summary dismissal of Dicks's claims against Curtis Glass but vacate the dismissal of her claims against Somerset. We remand for continued proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado